IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| BENJAMIN CARTER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|        v. | ) | 1:13cv1188 (JCC/JFA) |
| | ) | |
| HALLIBURTON CO., | ) | |
| *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

At issue in this *qui tam* action brought under the
False Claims Act ("FCA") is whether the FCA's first-to-file bar
is triggered when an earlier-filed suit based on the same
material elements of fraud continues on direct review before the
Supreme Court.  After careful consideration of the parties'
arguments and applicable law, the Court concludes that the
first-to-file bar prohibits later-filed FCA actions while a
related case awaits a decision from the Supreme Court regarding
certiorari.

Currently pending is Defendants KBR, Inc., Halliburton
Company, Kellogg Brown & Root Services, Inc., and Service
Employees International, Inc.'s (collectively "Defendants")
Motion to Dismiss.  [Dkt. 20.]  For the reasons that follow, the
Court will grant Defendants' motion.

## I. Background

The Court is well versed in the subject matter underlying this case on account of its recurring appearance before the undersigned.  In brief, Benjamin Carter ("Carter" or "Plaintiff") alleges that Defendants falsely billed the government for services provided to United States military forces in Iraq in violation of the FCA.  (Compl. [Dkt. 1] at 12–19.)  These allegations stem from Carter's work as a reverse osmosis water purification unit operator from mid–January 2005 until April 2005.  (*Id.* at 12-13.)  Carter claims that Defendants invoiced the United States for purification work during this period although water purification did not begin until approximately May 2005.  (*Id.* at 16.)  Carter maintains that he and his fellow employees were instructed to submit time sheets for purification work that was never in fact performed.  (*Id.* at 12-14.)  Carter also contends that, as part of an overall scheme to overbill the government, Defendants required all trade employees to submit time sheets totaling exactly twelve hours per day regardless of the actual hours worked.  (*Id.* at 33.)

The procedural history of this case can only be described as arduous.  Carter filed his original complaint under seal on February 1, 2006, in the United States District Court for the Central District of California.  *See United States ex*

*rel. Carter v. Halliburton Co.,* No. 06-cv-0616 (C.D. Cal. filed

Feb. 1, 2006).  In May 2008, after extensive investigation, the

action was unsealed and transferred to this Court.  *See United*

*States ex rel. Carter v. Halliburton Co.,* No. 1:08-cv-1162 (E.D.

Va. filed Feb. 1, 2006).  Upon transfer, Carter amended his

complaint.

By order dated January 13, 2009, the Court dismissed

Carter's first amended complaint without prejudice for failure

to plead fraud with particularity.  (1:08-cv-1161 [Dkt. 90].)

Carter submitted a second amended complaint on January 28, 2009.

(1:08-cv-1161 [Dkt. 92].)  Defendants then moved to dismiss

Carter's second amended complaint under Rules 9(b) and 12(b)(6)

of the Federal Rules of Civil Procedure.  (1:08-cv-1161 [Dkt.

105].)  Following a hearing on this matter, the Court dismissed

Counts 2 and 3 in their entirety, and temporally narrowed Counts

1 and 4.  (1:08-cv-1161 [Dkt. 122].)  At this point, Defendants

answered the remaining allegations and the case proceeded

through discovery.

In March 2010, one month before the scheduled trial

date, the Department of Justice contacted the parties and

informed them of a similar case pending in the United States

District Court for the Central District of California since

2005.  *See United States ex rel. Thorpe v. Halliburton Co.,* No.

05-cv-08924 (C.D. Cal. filed Dec. 23, 2005).  Defendants then

moved to dismiss Carter's suit under the FCA's "first-to-file

bar," which precludes related claims that have been previously

filed by another relator.  *See* 31 U.S.C § 3730(b)(5).  Finding

Defendants' argument persuasive, the Court granted Defendants'

motion and dismissed Carter's action without prejudice on May

10, 2010.  (1:08-cv-1161 [Dkt. 307].)  Carter filed a notice of

appeal to the Fourth Circuit on July 13, 2010.  (1:08-cv-1161

[Dkt. 325].)

On July 20, 2010, the District Court for the Central

District of California dismissed the *Thorpe* action.  In

response, Carter re-filed his complaint in this Court.  *See*

*United States ex rel. Carter v. Halliburton Co.,* No. 1:10–cv–864

(E.D. Va. filed Aug. 4, 2010).  Carter simultaneously moved to

dismiss his pending appeal, which the Fourth Circuit granted on

February 14, 2011.  (1:08-cv-1161 [Dkt. 331].)

On May 24, 2011, the Court dismissed Carter's 2010

complaint without prejudice on grounds that Carter had filed the

2010 case when the first suit remained pending on appeal,

thereby creating his own jurisdictional bar under the FCA's

first-to-file provision.  (1:10-cv-864 [Dkt. 47].)  Carter did

not appeal this ruling.

On June 2, 2011, Carter again re-filed his complaint.

*See United States ex rel. Carter v. Halliburton Co.,* No. 1:11–

cv–602 (E.D. Va. filed June 6, 2011).  After the case was

unsealed, Defendants moved to dismiss the action under the FCA's first-to-file bar and the FCA's public disclosure bar. *See* 31 U.S.C. §§ 3730(b)(5), (e)(4)(A). Defendants further argued that even if neither jurisdictional bar applied, virtually the entire case must be dismissed under the FCA's six-year statute of limitations. (1:11-cv-602 [Dkt. 16].)

On November 29, 2011, the Court granted Defendants' motion, again holding that Carter's claims were barred by the FCA's first-to-file bar. (1:11-cv-602 [Dkt. 57].) The Court also found that Carter's most recent complaint had been filed beyond the FCA's six-year statute of limitations and would be time barred should it be re-filed. After further concluding that the Wartime Suspension of Limitations Act ("WSLA") did not apply to extend the limitations period, the Court dismissed the case with prejudice. (1:11-cv-602 [Dkt. 58].)

Carter timely noticed an appeal, and on March 18, 2013, the Fourth Circuit reversed in part and remanded the case for further proceedings. *See United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171 (4th Cir. 2013). The Fourth Circuit concluded that Carter's complaint was not time barred because "the WSLA applies to civil claims" filed by a relator and the statute of limitations had been tolled by virtue of the United States military conflict in Iraq. *Id*. at 177-81. The court, however, went on to agree that the first-to-file bar

precluded Carter's claims.  *Id.* at 181-81.  After noting that

the appropriate disposition in such circumstances is dismissal

*without* prejudice, the Fourth Circuit remanded the case for

consideration of the public disclosure bar because "[t]he

district court did not reach this argument."  *Id.* at 183-84.

Following a status hearing on May 28, 2013, this Court

ordered supplemental briefing.  (1:11-cv-602 [Dkt. 80].)  After

considering the parties' submissions, the Court denied

Defendants' motion to dismiss based on the FCA's public

disclosure bar.  Nevertheless, in accordance with the Fourth

Circuit's ruling regarding the FCA's first-to-file bar, the

Court dismissed Carter's complaint without prejudice.  (1:11-cv-

602 [Dkt. 88].)

On June 24, 2013, Defendants filed a petition for

certiorari with the Supreme Court challenging, among other

things, the Fourth Circuit's conclusion that the WSLA operates

to toll the statute of limitations in such cases.  On October 7,

2013, the Supreme Court invited the Solicitor General's office

to file a response brief.  *See Kellogg Brown & Root Servs., Inc.*

*v. United States ex rel. Carter,* __ U.S. __, 134 S. Ct. 375

(2013).  To date, the Supreme Court has not ruled on Defendants'

petition.

Carter filed this case on September 23, 2013.  (Compl.

at 1.)  The instant complaint is identical to Carter's prior

pleadings, with the exception of its title, case number, and signature block.  Carter once more alleges that "personnel were not engaged in any water testing or purification duties" and "Defendants were billing the Government for work that was not actually performed."  (*Id.* at 34.)

Defendants have again moved to dismiss on jurisdictional grounds.  (Defs.' Mot. to Dismiss at 1.) According to Defendants, because Carter's 2011 action remains pending before the Supreme Court, the first-to-file bar precludes his claims.  (Defs.' Mem. in Supp. [Dkt. 21] at 2-3.) Defendants further argue that, even assuming this Court has jurisdiction, the doctrine of *res judicata* precludes Counts 2 and 3 because the Court dismissed identical claims with prejudice in 2009.  (*Id.* at 2.)

## II. Analysis

Because of its effect on this Court's jurisdiction, the Court will first address Defendants' contention that the FCA's first-to-file bar precludes Carter's claims.  *See Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 585 (E.D. Va. 1992) (commenting that "a court should consider [a] Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (citation omitted)).

7

The FCA imposes civil liability on persons who knowingly submit false claims to the government.  *See* 31 U.S.C. §§ 3729–33.  To encourage the discovery of fraud that might otherwise escape detection, the FCA allows private individuals, acting as relators, to file *qui tam* actions on behalf of the government.  *See* 31 U.S.C. § 3730(b).  In the event of success, the relator can collect a portion of the proceeds along with reasonable expenses and attorneys' fees.  *See* 31 U.S.C. § 3730(d)(2).  "While encouraging citizens to act as whistleblowers, the Act also seeks to prevent parasitic lawsuits based on previously disclosed fraud."  *Carter,* 710 F.3d at 181 (citation omitted).  "To reconcile these conflicting goals, the FCA has placed jurisdictional limits on its *qui tam* provisions, including § 3730(b)(5)'s first-to-file bar[.]"  *Id*.

The FCA's first-to-file bar provides, in pertinent part:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).  "In other words, only one *qui tam* action relating to a fraud is permitted to be pending at any time."  *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.,* 933 F. Supp. 2d 825, 835 (E.D. Va. 2013).  "This jurisdictional limitation is based on the sensible notion that

8

the first-filed action has already 'provide[d] the government notice of the essential facts of an alleged fraud,' and thus, the 'first-to-file bar stops repetitive claims.'"  *Id.* (citation omitted).  The FCA's first-to-file bar has been described as "an absolute, unambiguous exception-free rule."  *Carter*, 710 F.3d at 181.

The Fourth Circuit recently confirmed that the first-to-file rule is a jurisdictional bar.  *See Carter*, 710 F.3d at 181; *see also Beauchamp*, 933 F. Supp. 2d at 835 ("The FCA's first-to-file bar deprives courts of subject matter jurisdiction over later-filed FCA actions while an earlier-filed action based on the same material elements of fraud remains pending.").

Courts applying § 3730(b)(5) follow a two-step analysis.  First, the court must determine whether the prior-filed action was "pending" at the time the later-filed action was brought.  Second, the court must decide whether the two cases are "related."  *See Carter,* 710 F.3d at 182; *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1277 (10th Cir. 2004) (noting that § 3730(b)(5) applies "so long as a subsequent complaint raises the same or a related claim based in significant measure on the core facts or general conduct relied upon in the [pending] first *qui tam* action"); *see also United States ex rel. Palmieri v. Alpharma, Inc.,* 928 F. Supp. 2d 840, 851 n.14 (D. Md. 2013) (observing that a second-filed *qui tam*

action is permissible only when the first suit is no longer
pending and it was dismissed without prejudice).

Here, Defendants point to Carter's identical 2011 case
as barring the present suit.  (Defs.' Mem. in Supp. at 3.)
Defendants note that the 2011 case remained on review with the
Supreme Court when Carter filed this action.  (*Id.*)  Thus,
concludes Defendants, this action must be dismissed "for lack of
subject matter jurisdiction under the first-to-file bar."  (*Id.*)
In other words, Defendants allege that Carter created his own
jurisdictional bar by filing the instant suit when his prior
case continued on appeal.

It is unchallenged that the instant case and the 2011
case are related under § 3730(b)(5).  *See Carter,* 710 F.3d at
182 (noting that a later case is "related" when it is "based
upon the 'same material elements of fraud' . . . even though the
subsequent suit may 'incorporate somewhat different details.'"
(citation omitted)).  As Defendants correctly point out, the
complaint in this case is materially identical to Carter's prior
pleadings.  *See Grynberg,* 390 F.3d at 1280 (finding two actions
related where they raised "the same essential claim").  The only
dispute, therefore, is whether Carter's 2011 case was "pending"
within the meaning of the first-to-file bar when this action was
initiated on September 23, 2013.  (*See* Pl.'s Opp'n [Dkt. 28] at
2.)

The issue of whether a related case on petition to the Supreme Court is preclusive under the first-to-file bar appears to be a question of first impression.  Accordingly, answering this question requires the Court to first turn to the statute. *See Duncan v. Walker,* 533 U.S. 167, 172 (2001) (noting that the starting point for statutory interpretation is the language of the statute itself).  When Congress does not expressly define a statutory term or phrase, a court should "normally construe it in accord with its ordinary or natural meaning."  *Smith v. United States,* 508 U.S. 223, 228 (1993); *see also Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir. 2001) ("When Congress uses a term of art . . . we presume that it speaks consistently with the commonly understood meaning of this term.").  Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 (1989) (citation omitted).

Congress provided no definition of the term "pending" in § 3730; however, the word has a common meaning among lawyers and judges.  When an action is appealed to a higher court, as is the case here, it generally remains pending until the appeal is disposed of.  *See, e.g., de Rodulfa v. United States,* 461 F.2d 1240, 1253 (D.C. Cir. 1972) ("An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below . . . .   Thus the suit is pending until the appeal is

disposed of[.]" (citations and internal quotation marks

omitted)); *Alaska Cent. Express, Inc. v. United States,* 51 Fed.

Cl. 227, 229 n.1 (Fed. Cl. 2001) (noting that a number of

statutory schemes consider a case to be pending while on

appeal); *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 6 F.3d 78,

84 (2d Cir. 1993) ("[A] case remains 'pending,' and open to

legislative alteration, so long as an appeal is pending or the

time for filing an appeal has yet to lapse."); *In re Lara,* 731

F.2d 1455, 1459 (9th Cir. 1984) ("Judgment does not become final

so long as the action in which it is entered remains pending,

and an action remains pending until final determination on

appeal." (citations omitted)); *Conopco, Inc. v. Roll Intern.,*

231 F.3d 82, 94 (2d Cir. 2000) ("California law generally

considers a case pending, *i.e.,* not final or conclusive, until

the appeal process is exhausted.").

   This understanding of the term is consistent with the

dictionary definitions to which courts often turn in the absence

of legislative definition. *See MCI Telecomms. Corp. v. Am. Tel.*

*& Tel. Co.,* 512 U.S. 218, 225 (1994).  Black's Law Dictionary

defines "pending" as "[r]emaining undecided; awaiting decision."

*Black's Law Dictionary* 1169 (8th ed. 2004).  Other dictionaries

define the term similarly.  *See Webster's New World Dictionary*

*and Thesaurus* 456 (1996) ("not decided; impending"); *see also In*

*re Easthope,* No. 06–20366, 2006 WL 851829, at *2 (Bankr. D. Utah

Mar. 28, 2006) ("These definitions indicate that a case is pending only so long as there remains something left to decide.").

Thus, a commonsense reading of the word "pending" in § 3730(b)(5) requires the conclusion that a first-filed *qui tam* action remains pending while on appeal.  To construe the term otherwise, that is, to say that a *qui tam* suit is no longer pending when it is on direct review, would distort the natural meaning of the term.  *See Bracey v. Luray*, 138 F.2d 8, 10 (4th Cir. 1943) ("It is elementary in the construction of statutes that words are to be given their 'natural, plain, ordinary and commonly understood meaning,' unless it is clear that some other meaning was intended[.]" (citation omitted)); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," that when Congress writes a statute, it "says . . . what it means and means . . . what it says there.").

Moreover, this straightforward construction of the term is fully consistent with the statute's purpose and policy. The first-to-file bar was enacted to, among other things, "stop[] repetitive claims" and "prevent opportunistic successive claims."  *Beauchamp,* 933 F. Supp. 2d at 835 (citation omitted); *see also Palmieri,* 928 F. Supp. 2d at 847 ("[T]he first-to-file rule functions both to eliminate parasitic plaintiffs who

piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim.  The rule also has the benefit of preventing a double recovery against the defendant." (citations and internal quotation marks omitted)); *United States ex rel. LaCorte v. Wagner,* 185 F.3d 188, 191 (4th Cir. 1999) (stating that the first-to-file bar "struck a careful balance between encouraging citizens to report fraud and stifling parasitic lawsuits").  Applying the first-to-file bar while a related case remains on direct review forecloses the possibility of duplicative lawsuits in the event of a remand, which, as noted above, is exactly what congress hoped to avoid through this statute.  *See Beauchamp,* 933 F. Supp. 2d at 385 (explaining that under § 3730(b)(5) "only one *qui tam* action relating to a fraud is permitted to be pending at any time").  Adopting the opposite conclusion, however, could result in multiple ongoing lawsuits concerning the same subject matter and create confusion as to when a second-filed *qui tam* action is properly before the court. Such a result clearly flies in the face of congressional intent. *Walburn v. Lockheed Martin Corp.,* 431 F.3d 966, 971 (6th Cir. 2005) ("The first-to-file bar furthers the policy of the False Claims Act in that [it] . . . stops repetitive claims.").

Finally, the applicable case law, although sparse, suggests that a relator's pending appeal operates to bar any

successive related claims until the appeal is decided. *See*

*United States ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908,

920 (4th Cir. 2013) (noting that the first-to-file bar becomes

inapplicable when a related action has "been dismissed by the

district court, the dismissal has been affirmed by [the

applicable Court of Appeals], **and** certiorari has been denied by

the Supreme Court" (emphasis added)); *see also Carter,* 2011 WL

2118227, at *3-4.

     Carter, nevertheless, argues that Defendants' petition

for certiorari does not bar the instant suit because "[e]ven if

the [Supreme] Court granted [Defendants'] petition and issued an

opinion on the merits in favor of [Defendants], the Carter 2011

complaint would remain dismissed because the issues presented to

the Supreme Court could not result in an opinion that would

revive that complaint [in this Court]."  (Pl.'s Opp'n at 4.)  In

other words, Carter argues that a case should be deemed pending

when on appeal only if it is capable of returning to the

district court for further litigation.  (*Id.*)  While this

interpretation would undoubtedly avoid duplicitous lawsuits in

the district court, the Court is unpersuaded that Carter's

position comports with the statute.

     First, Carter's argument asks the Court to depart from

the simple definition of pending described above in favor of a

test that requires the district court to independently determine

if a case on appeal is capable of further litigation.  Not only

does this create ambiguity, it necessitates yet another layer of

analysis when the first-to-file bar "'is designed to be quickly

and easily determinable[.]'"  *Palmieri,* 928 F. Supp. 2d at 848

(quoting *In re Nat. Gas Royalties Qui tam Litig. (CO2 Appeals),*

566 F.3d 956, 964 (10th Cir. 2009)).  Moreover, courts to

address the first-to-file bar have repeatedly cautioned against

judicially created exceptions to the statute's plain language.

*See, e.g., United States ex rel. Lujan v. Hughes Aircraft Co.,*

243 F.3d 1181, 1187 (9th Cir. 2001) (rejecting the relator's

arguments "because they would require [the] court to read

exceptions into the [§ 3730(b)(5)'s] plain language").  Carter's

position lies directly contrary to this maxim, as it demands the

Court to disregard a common application of the term "pending" in

exchange for judicial review of an appellate court's possible

rulings.

Similarly, permitting a first-filed *qui tam* action to

remain on appeal while another simultaneously proceeds in the

district court, as suggested by Carter, does not comport with

Congress's strong intent to avoid parallel lawsuits.  The first-

to-file bar provides that once "a person brings an action under

this subsection, no person other than the Government may

intervene or bring a related action based on the facts

underlying the pending action."  31 U.S.C. § 3730(b)(5).  This

language is clear – if a *qui tam* action has been brought, no one other than the Government may intervene or bring another related action.  As noted by the Fourth Circuit, "[b]y drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in *qui tam* suits" or by extension bringing another related suit. *United States ex rel. LaCorte v. Wagner,* 185 F.3d 188, 191 (4th Cir. 1999).

Finally, although Carter's proposed test would indeed avoid competing lawsuits in the district court, he neglects to consider the complications that could arise by permitting simultaneous appellate review of a first-filed *qui tam* action. For example, it is not hard to foresee the nightmare created if this instant suit resulted in a verdict for Carter and the Supreme Court later ruled that his 2011 case was filed outside the limitations period.  Untangling such a mess would undoubtedly result in peripheral litigation and the unnecessary expenditure of judicial resources.  Such difficulties are easily avoided by following the more straightforward definition of pending described above.

In light of the foregoing, the Court finds that a first-filed *qui tam* action remains "pending" within the meaning of § 3730(b)(5) while a petition for certiorari remains before the Supreme Court.  Accordingly, because Carter filed the

instant action when his prior identical case remained on appeal

to the Supreme Court, this case is barred by the FCA's first-to-

file bar and it will be dismissed.[1]

### III. Conclusion

For the foregoing reasons, the Court will grant

Defendants' motion to dismiss.  An appropriate order will

follow.

|  | /s/ |
|---|---|
| May 2, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[1]   Given this ruling, the Court will not address Defendants' remaining
arguments.  *See Moore v. PYA Monarch, LLC,* 238 F. Supp. 2d 724, 728 (E.D. Va.
2002) ("Because the Court finds the first argument to be dispositive of the
case, it need not address the remaining arguments."); *Verosol B.V.,* 806 F.
Supp. at 585 (commenting that if a court "must dismiss the complaint for lack
of subject matter jurisdiction, the accompanying defenses and objections
become moot and do not need to be determined").  Nevertheless, as Carter
concedes in his opposition, the doctrine of *res judicata* would in fact bar
any claims previously dismissed by this Court with prejudice.  (Pl.'s Opp'n
at 2.)